573 So.2d 83 (1990)
Esteban DELGADO, Appellant,
v.
STATE of Florida, Appellee.
No. 90-00730.
District Court of Appeal of Florida, Second District.
December 28, 1990.
Karen M. Gottlieb, Coconut Grove, and Michael L. Von Zamft of Von Zamft & Lorenzo, Coral Gables, for appellant.
*84 Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
THREADGILL, Judge.
Esteban Delgado was indicted and convicted of the first-degree murder of Joe King in violation of section 782.04, Florida Statutes (1987). He was sentenced to life in prison with a twenty-five year minimum mandatory term. Delgado contends that the trial court erred in admitting evidence suggestive of other crimes, in denying a motion to reopen the defense case to present evidence of self-defense, and in denying a requested jury instruction on self-defense. We reverse and remand for a new trial based on the trial court's error in admitting evidence suggestive of other crimes and in prohibiting the defense from reopening its case.
In the early evening of February 14, 1989, Delgado visited King at his home. Two people were seated having dinner with King when he arrived, Manuel Cepero and Silvio Figueras. The prosecution theorized that Delgado went to King's house to kill him in jealousy over a woman, Velma Brown. The defense put on no case, but attempted to show through cross-examination of the state's witnesses that Delgado went to King's house to pick up his dog, that King assaulted him with a gun, and a struggle ensued during which King was shot.
The uncontradicted evidence of one eyewitness, Silvio Figueras, showed that Delgado entered the victim Joe King's home, stated, "Joe, I have something for you," and pulled out a gun. King, seated at the dining table, said, "Hi ya, Steve," jumped up, and tried to grab Delgado's arm. Delgado backed up, and King tried to catch him. Delgado fired one shot, and King ran away from Delgado. Delgado fired again; King continued to move. King fell with the third shot, and Delgado said, "He's no (inaudible) my wife." Delgado told Figueras and the other eyewitness Manuel Cepero to sit down, and at the same time Desi, Cepero's son, arrived. Delgado went outside to tell Desi that King was busy. Cepero followed. When Desi drove off, the two reentered the house, and then all three, Delgado, Cepero, and Figueras, left. Figueras pointed to Delgado's dog which he, at Delgado's request, had taken to King's house that day. Sometime before Delgado arrived the phone rang, and King spoke briefly. He did not seem angry or upset after the phone call.
Manuel Cepero was the only other eyewitness. He first told police he did not see the shooting because he was leaving the house as the shots were fired, but at trial he testified that he was in the house during the shooting and, although he did not see Delgado shooting, as King blocked his view, he heard the shots. Cepero's son Desi testified he heard gunshots and saw Delgado come out of King's house with a gun in his hand.
Velma Brown, Delgado's former girlfriend, testified she was with Delgado on the day of the shooting. Delgado owned a ten millimeter gun, the size gun that killed King, and the case for it was in his truck the day of the shooting. She picked it up and noticed that it was heavy.
Just before he left for King's house, Delgado told Brown he was going to kill King. She asked him to wait until she could retrieve her car from King's house, and Delgado replied that he would beat him up instead. He then said he was going to "get" Bobby Rodriguez and Eddie Ketring.
Brown testified further that she called King to tell him to be careful, that Delgado was crazy. King said he was not worried, that Delgado was "his brother." She denied telling King that Delgado told her he was going to shoot him, and she denied Delgado's saying he was going to King's to get his dog.
Over defense objections, Brown testified that she and Delgado had used drugs, that they had once used cocaine at King's house, and that Delgado told her earlier in the day, in the context of a conversation about Delgado's arguments with her former husband, that he had killed ten men.
Delgado first contends on appeal that his statement that he had killed ten *85 men and Brown's testimony about drugs should have been excluded as irrelevant. We agree. § 90.404(2)(a), Fla. Stat. (1987).[1] The state filed no Williams rule notice with respect to these facts and the jury received no Williams rule charge.[2]
The fact that the evidence of collateral crimes comes from prior statements of the defendant does not exempt it from the Williams rule. In Jackson v. State, 451 So.2d 458 (Fla. 1984), the supreme court stated:
There is no doubt that his admission (to prior unrelated crimes) would go far to convince men of ordinary intelligence that the defendant was probably guilty of the crime charged. But, the criminal law departs from the standard of the ordinary in that it requires proof of a particular crime. Where evidence has no relevancy except as to the character and propensity of the defendant to commit the crime charged, it must be excluded.
451 So.2d at 461, citing Paul v. State, 340 So.2d 1249, 1250 (Fla. 3d DCA 1976). Also this court has previously observed that where the collateral crime evidence consists of prior statements of the defendant, "[t]he argument for inadmissibility is, in fact, more cogent." Green v. State, 190 So.2d 42, 47 (Fla. 2d DCA 1977).
Delgado's statement boasting that he had killed ten people did not relate to a material fact in issue: it was made at a time, according to the state's evidence, when Delgado had no intent to harm or kill King; it was made when he and Brown had gone to a lake to swim and effect a reconciliation. The statement was wholly unconnected to his threat to kill King made hours later, just before he left for King's house.
The state's introduction of this statement and the state's closing argument compounded the likelihood of unfair prejudice. In closing argument the state told the jury: "[W]e know that Velma was there when he said he was going to go over to kill, and that he had killed before, that he was going to kill here and he would kill again. We know that."
Delgado's statement was inadmissible for the same reasons the boast of prior killings in Jackson was inadmissible: it was not relevant to a material fact in issue and there was no evidence the boast was true. 451 So.2d at 461. Jackson had pointed a gun at the witness and boasted of having once been a "thoroughbred killer." The court reversed Jackson's two homicide convictions, holding that the admission of the statement was "impermissible and prejudicial."
Here, as in Jackson, the state failed to prove that Delgado had in fact committed any prior killings and the statement should have been excluded. Jackson, 451 So.2d at 461; Pieczynski v. State, 516 So.2d 1048, 1051 (Fla. 3d DCA 1987); Cole v. State, 356 So.2d 1307, 1309 (Fla. 2d DCA 1978). Any probative value was far outweighed by the obvious danger of unfair prejudice. See Francis v. State, 512 So.2d 280, 281 (Fla. 2d DCA 1987); § 90.403, Fla. Stat. (1987).
The court also erred in admitting evidence of Delgado's involvement in illegal drug activity. Over objections, the state elicited from Velma Brown that on one unspecified occasion, she, Delgado, and King, had used cocaine at King's residence. In closing argument, the state told the jury that for six months prior to the shooting, King and Delgado did "recreational drugs together." The state also told the jury, "I told you up front, and made no secret to hide the fact, that Mr. Delgado was involved in illegal drug activity."
Delgado's involvement in narcotics was not relevant to the shooting incident according to the state's theory of prosecution and was never shown to be an integral part of the relationship between Delgado, King, and Brown or included in the immediate *86 factual context leading up to the shooting. See Craig v. State, 510 So.2d 857, 863-64 (Fla. 1987), cert. den., 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988).
The state argues that any error in the admission of this evidence was harmless. We disagree. In Straight v. State, 397 So.2d 903, 908 (Fla.), cert. den., 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981), the supreme court held that the erroneous admission of collateral crimes evidence "is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged." Accord Castro v. State, 547 So.2d 111, 115 (Fla. 1989); State v. Drolet, 549 So.2d 1172 (Fla. 2d DCA 1989). The test for harmless error is whether an appellate court can say beyond a reasonable doubt that the error did not affect the verdict. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). Based on our review of this record we cannot say this. Therefore, the admission of the evidence was reversible error.
We also conclude that the trial court abused its discretion in not allowing Delgado to reopen his case to present evidence of self defense. The request came after both sides had rested. Delgado presented no evidence at trial, but requested a jury instruction on self defense based on cross-examination of the state's witness. The trial court denied the instruction. Although the decision to allow a case to be reopened involves sound judicial discretion, not usually interfered with on the appellate level, Burk v. State, 497 So.2d 731, 733 (Fla. 2d DCA 1986), a denial will be reversed where the request is timely made and the jury will be deprived of evidence which might have had significant impact upon the issues to be resolved. See State v. Ellis, 491 So.2d 1296 (Fla. 3d DCA 1986); Barry v. Walker, 103 Fla. 533, 137 So. 711, 716 (1931); Steffanos v. State, 80 Fla. 309, 86 So. 204, 205-06 (1920).
In Steffanos, the supreme court reversed the defendant's conviction for unlawful carnal intercourse with a previously chaste woman under eighteen, finding the request to reopen timely where the defendant rested on a Saturday night, but requested permission to reopen on Monday morning to present witnesses on the issue of the woman's previous unchaste character.
In this case, defense counsel, immediately upon the denial of his requested self-defense instruction, requested permission to reopen. The jury had been excused at 4:30 in the afternoon and was to return at 9:00 the next morning. The motion was not made for delay but made in good faith upon defense counsel's learning that the self-defense instruction would not be given based on the evidence already presented. The record shows that counsel for the defense believed he had presented a sufficient predicate for his theory of self-defense through his cross-examination of the state's witnesses. The motion was timely: the parties had rested, the jury adjourned for the day, closing arguments had not begun, and the jury had not been charged; thus the case was not "technically closed." Steffanos v. State, 80 Fla. 309, 86 So. 204, 205 (1920); accord State v. Ellis, 491 So.2d 1296 (Fla. 3d DCA 1986).
Evidence of self defense is fundamental to a defense against the charge of homicide. Moreover, it was the only direct evidence the defense had thus far presented. Although unlike the situation in Burk, where the trial court knew the defendant was going to testify, here the trial court did not know precisely what evidence would be presented. We do not find the distinction determinative. The trial court knew the evidence would go to self defense to warrant the requested jury instruction and would therefore have exculpatory potential.
We are unable to ascertain whether the state would have been prejudiced by the reopening of the defense case because the trial court did not entertain arguments on the motion to reopen. Any prejudice, however, resulting from the presentation of new witnesses could have been addressed by specific objection based on discovery violations. Speculation about prejudice to the state should not defeat a new trial in this case where the motion to reopen was *87 timely and the nature of the evidence was critical to the defense. The trial court therefore erred in denying Delgado's motion to reopen his defense.
We find no error in the trial court's denial of Delgado's requested jury instruction on self defense because we agree with the trial court that there was no evidence presented by the state from which a jury could have concluded that Delgado acted in self defense. See Bryant v. State, 412 So.2d 347, 350 (Fla. 1982).
We reverse Delgado's conviction for murder in the first degree and remand for a new trial.
FRANK, A.C.J., and PATTERSON, J., concur.
NOTES
[1] Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[2] Williams v. State, 110 So.2d 654 (Fla. 1959).