718 So.2d 350 (1998)
Willis James REGISTER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-51.
District Court of Appeal of Florida, Fifth District.
September 25, 1998.
James B. Gibson, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellee.
ANTOON, Judge.
Willis James Register appeals his judgments and sentences entered by the trial *351 court after a jury found him guilty of one count of first-degree murder[1] and two counts of attempted murder[2]. Mr. Register contends the trial court erred in denying his motion to reopen his case. We affirm because Mr. Register has failed to demonstrate that the trial court abused its discretion in denying his motion.[3]

FACTS
On the day of the offenses, Mr. Register was searching for Mr. Lemon and so he went to Mr. Lemon's relatives' house to see whether he was there. They told Mr. Register that Mr. Lemon was not there but they expected him to stop by later that evening. Mr. Register waited at the house until Mr. Lemon arrived. When Mr. Lemon arrived with his girlfriend, he spoke with Mr. Register for some time and then asked him to leave. Upon being asked to leave, Mr. Register jumped up and shot Mr. Lemon twice and the girlfriend once. Mr. Register also shot at Mr. Lemon's aunt, but she was able to escape from the room unharmed. After being wounded, Mr. Lemon ran out of the house and down the road with Mr. Register in pursuit. Approximately 400 feet from the house, Mr. Lemon collapsed. Then, while standing over Mr. Lemon, Mr. Register reloaded his gun and shot Mr. Lemon in the head, killing him.
Mr. Register confessed to the shooting, but contended that he shot Mr. Lemon in self-defense. He maintained that someone told him that Mr. Lemon had been hired to kill him because he had worked as a confidential informant for the Federal Drug Enforcement Agency.
The state presented its case-in-chief through the introduction of the testimony of twenty-one witnesses. After the state rested, Mr. Register called twelve witnesses but did not testify himself. Mr. Register's last witness was a psychologist who opined that Mr. Register suffered from paranoid delusions and was legally insane at the time he committed the crimes. After the defense rested its case-in-chief, the state called, as its only rebuttal witness, a psychiatrist who testified that, although Mr. Register had a personality disorder, he was able to distinguish right from wrong at the time he committed the crimes.
After the state submitted its rebuttal case, the trial court questioned Mr. Register in order to determine whether he had voluntarily waived his right to testify. Mr. Register's answers to the trial court's questions satisfied the court that he had voluntarily decided not to exercise his right to testify. The parties then announced that no additional evidence would be offered. The trial court recessed for the day, instructing the parties to proceed with closing arguments the next morning.
The following morning, before closing arguments commenced, Mr. Register moved to reopen his case, informing the trial court that he had changed his mind and wanted to testify. Mr. Register did not offer the trial court an explanation as to why he did not testify during his case-in-chief, nor did he submit a proffer of the testimony he intended to present. The state objected and the trial court sustained the objection thereby denying Mr. Register's motion to reopen his case.
After closing arguments, the case was submitted to the jury which found Mr. Register guilty of one count of first-degree murder and two counts of attempted murder. The trial court entered judgments in accordance with the jury's verdict, and then sentenced Mr. Register to a term of life imprisonment on the murder conviction, a consecutive term of life imprisonment on one attempted murder conviction, and a consecutive term of thirty years' imprisonment on the other attempted murder conviction. Mr. Register appeals, arguing the trial court abused its discretion in denying his motion to reopen his case.

DISCUSSION
The determination of whether a defendant should be permitted to reopen his *352 case is a matter within the discretion of the trial court, and thus, a trial court's decision to deny a defendant's motion to reopen his case should not be disturbed on appeal absent a showing of an abuse of that discretion. See Steffanos v. State, 80 Fla. 309, 86 So. 204, 205 (1920). In reviewing a motion to reopen a defendant's case for the submission of additional evidence, the court should consider (1) the timeliness of the motion; (2) the character of the evidence sought to be introduced; and (3) the effect of allowing the evidence to be admitted. See Burk v. State, 497 So.2d 731, 733 (Fla. 2d DCA 1986)(citing United States v. Walker, 772 F.2d 1172, 1177 (5th Cir.1985)). The federal courts also consider whether the defendant has provided a reasonable explanation to justify reopening his case. See United States v. Walker, 772 F.2d at 1177. Each of these considerations will be discussed separately below.

Timeliness of the Motion
The first consideration is whether the defendant moved to reopen his case in a timely fashion. In Steffanos v. State, 86 So. at 205-06, our supreme court concluded that the defendant's request to reopen his case was timely because it was made before counsel had begun closing argument and before the jury was instructed. See also Delgado v. State, 573 So.2d 83, 86 (Fla. 2d DCA 1990). Here, Mr. Register's motion to reopen his case was made before counsel began closing arguments and before the trial court instructed the jury. However, the facts in this case are distinguishable from both Steffanos and Delgado because Mr. Register's motion came after he had specifically advised the trial court that he had voluntarily waived his right to testify and, perhaps more importantly, after the state had presented its rebuttal witness. Although not dispositive, we consider the timing of Mr. Register's request to weigh against his claim that the trial court abused its discretion in refusing to allow him to reopen his case because the request came after the state had presented its only rebuttal witness. See e.g. United States v. Walker, 772 F.2d at 1177.

Character of the Evidence
The next consideration is the character of the evidence sought to be introduced. In Delgado v. State, 573 So.2d at 86, the defendant requested, but was denied, permission to reopen his case to present evidence of self-defense. Id. Upon review, the second district held that the trial court erred in refusing to allow the defendant to reopen his case because the self-defense evidence which the defendant sought to introduce would have been the only evidence supporting the defendant's request for a jury instruction on self-defense. Id. The second district explained that a trial court's decision not to allow a defendant to reopen his case to submit additional testimony "will be reversed where ... the jury will be deprived of evidence which might have had a significant impact upon the issues to be resolved." Id.
Here, Mr. Register failed to proffer to the trial court the substance of his intended testimony; therefore, the trial court was unable to assess the character of the evidence he sought to introduce. Furthermore, since no proffer was submitted, we are unable to determine whether the jury was "deprived of evidence which might have had a significant impact upon the issues to be resolved." Delgado v. State, 573 So.2d at 86. While we recognize that a criminal defendant has the constitutional right to testify on his own behalf; see Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), based upon this record, we cannot conclude that the trial court abused its discretion in refusing to permit Mr. Register to reopen his case because we do not know the nature of the testimony he sought to introduce. Moreover, unlike the defendant in Delgado, Mr. Register had presented other direct evidence indicating that he believed the shootings took place in self-defense, and the trial court had instructed the jury on his theory of self-defense.

Effect of Admitting the Testimony into Evidence
The third consideration is whether the state's case would have been affected had the trial court permitted the defendant to reopen his case. In reviewing this consideration, we recognize that Mr. Register moved to reopen *353 his case after the state had rested and presented its rebuttal evidence.
It is likely the state will suffer prejudice when the trial court allows a defendant to reopen his case after the state has presented rebuttal evidence because the defendant could reopen his case simply to adjust his testimony to refute the state's rebuttal evidence. See United States v. Walker, 772 F.2d at 1180. However, since Mr. Register failed to inform the trial court what he intended to say if given the opportunity to testify, we are unable to evaluate whether the state's case would have been affected had the trial court granted Mr. Register's motion to reopen his case. See Delgado v. State, 573 So.2d at 86.

Reasonableness of Excuse to Reopen
The last consideration is whether the defendant submitted a reasonable excuse justifying his request to reopen his case. The excuse must be reasonable because the trial court is vested with discretion as to the order of proof during a trial in order to "[f]acilitate... the discovery of the truth ..." and "[a]void needless consumption of time." § 90.612(1)(a)-(b), Fla. Stat. (1993); see also Britton v. State, 414 So.2d 638, 639 (Fla. 5th DCA 1982). As a result, a defendant is not automatically entitled to reopen his case simply because he changes his mind and decides to introduce additional evidence. Rather, in moving to reopen his case, a defendant has the burden to "provide a reasonable explanation for failing to present the evidence in its case-in-chief." See United States v. Walker, 772 F.2d at 1177. In providing this explanation, the defendant has the burden to provide the trial court with specific and sufficient reasons why the trial court should reopen his case-in-chief. See Rose v. State, 472 So.2d 1155, 1158 (Fla.1985).
Our review of the cases wherein an appellate court has reversed the denial of a defendant's motion to reopen his case reveals that the reasons supporting the defendants' motions were both reasonable and clearly set forth. For example, in Louisy v. State, 667 So.2d 972, 973 (Fla. 4th DCA 1996), the defendant sought to reopen his case because defense counsel had failed to elicit certain "crucial" questions when the defendant was first called to testify. In Delgado v. State, 573 So.2d at 86, the defendant asked to reopen his case so that he could submit evidence of self-defense after the trial court denied his request for a jury instruction on self-defense and the defendant had not submitted any other direct evidence that would support such an instruction.
In United States v. Walker, 772 F.2d at 1175, the defendant requested permission to reopen his case so that he could testify because at the time he concluded his case-in-chief he was too emotional and upset and didn't want to be "forced to get on the stand...." His request to reopen his case was made after the court had recessed for the weekend giving the defendant time to regain his composure. Id. at 1183-84. The court of appeals ruled that the defendant was entitled to reopen his case, noting that "it would be difficult to conceive of many defendants who would not feel some nervousness at the prospect of testifying at their own criminal trials" but that "Walker's situation went somewhat beyond this commonplace." Id. at 1184-85. Similarly, in United States v. Thetford, 676 F.2d 170, 182 (5th Cir.1982), cert. denied, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983), the defendant moved to reopen his case one day after he had rested because he discovered an audio recording which was critical to his defense. Also, in United States v. Larson, 596 F.2d 759, 770 (8th Cir.1979), the defendants sought to reopen their case because they had rested while unaware that just a few hours earlier the U.S. Marshal had located and served an important witness who possessed information that would implicate other persons in the crimes with which the defendants were charged. The witness' name and statement was located by defense counsel among 16,000 unindexed pages of discovery provided to counsel by the F.B.I. immediately before the defendants' trial began.
In contrast, Mr. Register failed to provide the trial court with any explanation for failing to testify during his case-in-chief. Instead, upon requesting permission to reopen his case, he simply stated that he had "decided that he wants to testify." This request *354 does not constitute a reasonable explanation for his refusal to testify during his case-in-chief. See United States v. Walker, 772 F.2d at 1177.

CONCLUSION
Mr. Register has failed to demonstrate that the trial court abused its discretion in denying his motion to reopen his case. Accordingly, we affirm his judgments and sentences.
JUDGMENTS and SENTENCES AFFIRMED.
DAUKSCH and W. SHARP, JJ., concur.
NOTES
[1] § 782.04(1)(a)1, Fla. Stat. (1993).
[2] §§ 782.04(1)(a)1, 777.04(1), Fla. Stat. (1993).
[3] Mr. Register raised two additional claims of error neither of which possesses merit or warrants discussion.