887 So.2d 384 (2004)
Emanuel "Manny" NEWMAN and Dr. Gary Brecher, Appellants,
v.
Hugh BRECHER, and Anne Guttenberg, individually, jointly, severally, and as Trustee of the Rose Libson Estate, Stanley Guttenberg, and Elaine Galatta Brecher, Appellees.
No. 4D03-2680.
District Court of Appeal of Florida, Fourth District.
September 29, 2004.
Rehearing Denied December 10, 2004.
*385 Barry R. Cohen of Law Offices of Barry R. Cohen, North Miami, for appellants.
John J. Glenn and Gregory A. Anderson of Anderson, St. Denis & Glenn, P.A., Boca Raton, for appellees.
BRYAN, BEN L., Jr., Associate Judge.
The appellants, Emanuel "Manny" Newman and Dr. Gary Brecher, sued Hugh Brecher and Anne Guttenberg alleging that they unduly influenced their mutual aunt, Rose Libson, in the execution of a trust.
Defendants, appellees, counterclaimed, alleging abuse of process. At the close of plaintiffs' case, the court granted a motion for directed verdict finding the evidence insufficient to establish a prima facie case for undue influence. Evidence was received on the counterclaim. Defendants, appellees, voluntarily dismissed the counterclaim prior to submission to the jury.
Appellants assert that the trial judge erred by weighing the evidence, excluding evidence of undue influence occurring subsequent to the execution of the trust and denying their motion to reopen their case and admit evidence submitted by defendants.
The evidence submitted of undue influence was that after the death of Rose's spouse in 1988, Anne, the only family member that lived near Rose, began to assist her. Hugh, who lived elsewhere, began to visit her on a regular basis. In 1988 Rose executed a will leaving her assets equally to her sister, niece and three nephews.[1] In September 1991, Anne took Rose to the office of Kenneth Rubin, an attorney. She executed a will and trust leaving $20,000 to each of her grand nieces and nephews, with the remainder to go to Hugh and Anne equally. In March 1992 she amended the trust leaving Gary and Emanuel $1,000 each and reducing the distribution to her sister and grand nieces and nephews.[2] In 1997 Hugh moved to Florida. Rose gave him a power of attorney. He undertook responsibility for her personal affairs. Hugh and Anne acted as Rose's primary caregivers until her death in September 2000.
At trial, Gary testified that through 1991 Rose seemed normal and never complained much about her health. He knew of nothing Hugh did to improperly influence Rose. Similarly, Emanuel testified that he knew of no specific acts of Hugh or Anne which constituted undue influence over Rose.
Excerpts of Hugh's deposition were read. He knew Mr. Rubin (who had been his father's attorney), but had not recommended him to Rose and had no conversations with him about the will or trust. Rose gave Hugh a $74,000 certificate in 1994 and other monetary gifts between 1997 and 2000.
Anne's deposition testimony read into evidence was that she had a copy of the trust before Rose died and that Rose made several gifts to her, including her home, during the 1990's.
Charles Devchacko, a physician specializing in psychiatry and human behavior, opined that Rose was susceptible to undue influence. His opinion was based upon a review of her medical records. He opined that she may have suffered from thyrotoxicosis, a toxic condition of the thyroid, that can affect a person's emotions. She may *386 have been suffering from some anxiety and could have had symptoms of early stages of dementia in 1991. Devchacko had never met Rose.
The parties agree that the burden of proof in suits alleging undue influence is codified in section 733.107, Florida Statutes (2003).
That statute provides that once the proponent of the will/trust establishes its formal execution and attestation, the burden is on the contestant to establish the grounds for revocation. However, this burden shifts to the proponents when the contesting party presents sufficient facts to raise a presumption of undue influence. A presumption of undue influence arises if the plaintiff establishes that the defendant (1) occupied a confidential relationship with the testator, (2) was a substantial beneficiary, and (3) was active in processing the instrument.
In In re Estate of Carpenter, 253 So.2d 697 (Fla.1971), the Supreme Court set out non-exclusive factors that courts could consider on the issue of undue influence or active procurement. The factors include:
(a) the presence of the beneficiary at the execution of the will; (b) presence of the beneficiary on those occasions when the testator expressed a desire to make a will; (c) recommendation by the beneficiary of an attorney to draw the will; (d) knowledge of the contents of the will by the beneficiary prior to execution; (e) giving of instructions on preparation of the will by the beneficiary to the attorney drawing the will; (f) securing of witnesses to the will by the beneficiary; and (g) safekeeping of the will by the beneficiary subsequent to execution.
Id. at 702.
The listed criteria are only general guidelines and a will contestant is not required to prove them all to establish active procurement. Each case is fact specific.
The facts in Raimi v. Furlong, 702 So.2d 1273 (Fla. 3d DCA 1997), are similar to this case. The third district found them insufficient to establish active procurement or undue influence. See also Flohl v. Flohl, 764 So.2d 802 (Fla. 2d DCA 2000).
The trial judge found that the only evidence of undue influence was that Rose changed her 1988 will in 1991 and 1992. The court ruled that simply changing a will is not evidence of undue influence. There were factual disputes as to whether Rose was adequately cared for or whether the brothers liked each other, but there were no factual issues relative to the procurement of the will/trust. No evidence was offered of any improper actions by Hugh. Anne's transporting Rose to a lawyer's office and remaining in the waiting room for over an hour does not establish active procurement/undue influence. Therefore, the directed verdict was properly entered.
Appellants also assert that the trial judge erred in excluding evidence of gifts and transfers to Hugh and Anne that occurred after the execution of the trust and will. While broad latitude should be allowed to explore the relationship of parties both before and after the time around which the inquiry centers, the court determined in this case that the gifts were remote in time. Except for the home, the gifts to Hugh and Anne were more than three years after the execution of the trust. Even if admissible, the gifts provide no evidence of active procurement of the trust.
Finally, appellants assert that the trial judge abused his discretion by denying their motion to reopen the case to admit evidence presented by appellees on their counterclaim as evidence of active procurement. The trial court has broad *387 discretion on this type motion. The evidence that appellants wanted to utilize on their claim was that of attorney Rubin who testified that Rose stated she had been told she had to leave a token payment to Emanuel and Gary, and even after his advice that she did not, insisted on doing it anyway. Appellants assert that it can be inferred that the person who told Rose this was either Hugh or Anne. In light of Mr. Rubin's additional testimony that Rose's accountant's wife recommended him, that he met with her individually and she did not seem to be influenced by anyone else, that he discussed her intent and was comfortable with her responses and that he never spoke with Hugh or Anne regarding the trust, there was no abuse of discretion by the trial judge.
The final judgment is affirmed.
STONE and WARNER, JJ., concur.
NOTES
[1] That will was prepared by Barry Eden who either was a partner of or shared an office with Ken Rubin. He subsequently retired.
[2] Marsha Soforenko worked for both Eden and Rubin and witnessed all the documents.