936 So.2d 777 (2006)
Ramona ROBINSON, Appellant,
v.
Michael A. WEILAND, et al., Appellees.
No. 5D05-2380.
District Court of Appeal of Florida, Fifth District.
September 1, 2006.
Robert C. Wilkins, Jr., of Robert C. Wilkins, Jr., P.L., Maitland, for Appellant.
Anthony N. Brimo of Jacoby, Brimo, Figueroa, & Chase, Melbourne, for Appellee Michael A. Weiland.
Erika McBryde, of Frese, Hansen, Anderson, Anderson, Roche, Heuston & Whitehead, P.A., Melbourne, for Appellee John M. Cetrano.
No Appearance for other Appellees.
SAWAYA, J.
This appeal involves three individuals competing for the designation annuity beneficiary" in consolidated interpleader actions filed by two annuity companies seeking a judicial decree determining who is entitled to the proceeds of the two annuities purchased by the decedent, John S. Cetrano, prior to his death. In their respective *778 pleadings filed in the underlying action, John M. Cetrano, son of the decedent, claimed 60% and Michael Weiland, a female friend of the decedent,[1] claimed 40% of the total proceeds based on change of beneficiary forms purportedly executed by the decedent prior to his death. Ramona Robinson, the sister of the decedent, claims 100% of the total proceeds, contending that the purported change of beneficiary forms are invalid to remove her as the preexisting beneficiary of both annuities because the forms were not executed by the decedent or, in the alternative, if they were executed by the decedent, they were the product of undue influence by Weiland over the decedent.
The trial court, after considering the testimony of the parties and the evidence they submitted, requested written closing arguments. Before a final judgment was rendered, Robinson filed a Motion to Reopen Trial For Newly Discovered Evidence, requesting the court to hear additional evidence showing that a fraud had been committed on the court as Robinson had located Weiland's former roommate, who would testify that Weiland had filled out blank change of beneficiary forms to benefit herself. The court refused and rendered final judgment in favor of Weiland and Cetrano, finding that the change of beneficiary forms were valid. Robinson then filed a Motion for Rehearing, New Trial, or Evidentiary Hearing, which the trial court denied. On appeal, Robinson raises several issues, two of which we will discuss: (1) the final judgment was contrary to the manifest weight of the evidence; and (2) the court committed reversible error in summarily denying Robinson's motion to reopen the evidence to consider her colorable claim of fraud on the court without an evidentiary hearing.[2]
It is not necessary to discuss in detail the facts and circumstances of this case or the testimony presented by each party in order to resolve the first issue. Suffice it to say that while much conflicting and self-serving testimony was offered by each claimant in an attempt to secure the annuity proceeds, their testimony was consistent in their description of the decedent. He was a surly old curmudgeon, rigid and harsh in his treatment of others, inexorable in his opinions and beliefs, and a person not easily cajoled or persuaded to do anything he did not want to do. Although not flattering, this testimony reflects the true nature of the relationships the decedent had with each party and reveals that the decedent was not a man to be easily duped or unduly influenced by anyone. Based on this and other evidence presented by Weiland and Cetrano, which the trial court apparently found to be credible, we believe that reasonable individuals may differ regarding the trial court's decision to deny Robinson a new trial based on the asserted ground that the judgment is against the manifest weight of the evidence.[3] Therefore, we are unable to conclude *779 that the trial court abused its discretion in making that decision.[4] Although Robinson voices her indignation that the trial judge could find in favor of Weiland and Cetrano in light of the evidence that she presented, and while our reading of the trial transcripts leads us to question the trial judge's findings and the judgment he rendered, we must and do recognize that it was the trial judge who observed the witnesses testify, and he was in the better position to judge their credibility and weigh their testimony together with all of the other evidence presented.[5] It is not for us to reweigh that which was presented to, and considered by, the trial judge as the finder of fact.[6] Because we are unable to conclude that the trial court abused its discretion in not granting Robinson a new trial based on her argument that the judgment is against the manifest weight of the evidence, we must affirm as to this issue.
The issue whether the trial court erred in refusing to reopen the case to allow additional evidence is much more problematic and troubling. Robinson argues that the trial court committed reversible error by failing to allow her to present Sally Adams' testimony, particularly where the motion to reopen was made well before the final judgment was rendered and it was Weiland's own false answer to an interrogatory that prevented Robinson from locating Adams in time for the trial. Adams was the only person other than Weiland who had information about the completion of the beneficiary change forms and her testimony, if believed, proved that Weiland had committed a fraud on the court.
A paralegal employed by Robinson's attorney explained, in an affidavit, how Adams was discovered as a witness and how Weiland failed to truthfully disclose *780 information relative to her prior address. The paralegal states that four months prior to the October 2004 trial, she spoke with Weiland's ex-husband, who told her that a Flo McGrath and Sally Adams might have information that was pertinent. Weiland, McGrath, and Adams previously worked together. Although the ex-husband did not know where either McGrath or Adams lived currently, he knew that McGrath was working at a 7-Eleven on Wickham Road. Three days after obtaining this information, Robinson's attorney propounded interrogatories to Weiland asking for current or prior addresses for Adams. Weiland answered that she did not know of any.
The paralegal eventually located McGrath at a 7-Eleven, and McGrath stated that she thought Adams was working at a bar in Orlando, adding that Adams used to live with Weiland. This was the first indication that Robinson had of the roommate relationship. On October 22, three days before trial, the paralegal conducted an unsuccessful Internet search for Adams. On December 17, almost two months post-trial, the paralegal was training on a new Internet locator service and learned of a new way to trace persons. Using Weiland's address (where Adams used to live), the paralegal traced Adams to a Sally Bassham in Tennessee. Because no phone number was provided, the paralegal wrote to the address asking that the woman contact her if she was the correct Sally Adams. On January 9, 2005, Sally Adams called from her current residence in California and left a voice mail message on the firm telephone. The paralegal returned the call the next day. Adams subsequently executed an affidavit wherein she stated that she knew the decedent and had visited him in the hospital with Weiland in February 2002; that the decedent was clear that he did not want Cetrano to have any part of the annuities; and that the decedent never indicated, in her presence, that he wanted Weiland to have them. Adams' affidavit also stated that the decedent had signed the forms in March 2002, without them being completed, and that Weiland brought the uncompleted forms back to their residence and left them on Weiland's desk for several weeks. Her affidavit then states:
After the forms were at the house for a number of weeks, I personally was present when she completed the annuity beneficiary change forms. She told me she was including herself as a 40% beneficiary because she did not want to appear to be too greedy.... The forms were definitely not completed in the presence of John S. Cetrano [the decedent] and were not placed in their envelopes for mailing by John S. Cetrano; Michael Weiland filled them out at 1711 Joshua Drive, NE, Palm Bay, Florida and mailed them many weeks after she first had possession of the forms.
Armed with this information, Robinson's attorney filed a Motion to Reopen Trial For Newly Discovered Evidence so he could have Adams testify. The trial court summarily denied the motion on February 16, 2005, and the final judgment in favor of Weiland and Cetrano was rendered March 4, 2005.
Robinson argues that Weiland actively concealed the fact that she and Adams had been roommates during the critical time frame, pointing out that even when Weiland testified to who was present during her visits with the decedent, Weiland had failed to list Adams, yet Adams specifically stated in her affidavit that she had visited the decedent in the hospital with Weiland in February 2002. Too, when Weiland testified that she had put the decedent's wife's jewelry in a safety-deposit box using the account of a girlfriend to acquire the box as Weiland had no bank account, Weiland *781 failed to name the girlfriend. It turns out that that girlfriend was Adams and Adams and Weiland were roommates at that time. Thus, Robinson alleges, Weiland's fraud is both intrinsic, in that she apparently committed perjury in the trial, and extrinsic, in that her answer to the interrogatory concealed the fact that Adams had been her roommate during the pertinent time period. The fact that the two had been roommates during the pertinent time frame made Adams all the more critical to interview, yet Weiland stonewalled this effort. Robinson asserts that it was error to deny her motion to reopen the case to present the testimony of Adams.
The courts consistently agree that the trial court has discretion to grant a motion to reopen a case for presentation of additional evidence after the parties have rested and even after granting a motion for directed verdict for a party. See Newman v. Brecher, 887 So.2d 384 (Fla. 4th DCA 2004), review denied, 911 So.2d 792 (Fla.2005); Silber v. Cn'R Indus. of Jacksonville, Inc., 526 So.2d 974, 978 (Fla. 1st DCA 1988) (citing Eli Witt Cigar & Tobacco Co. v. Matatics, 55 So.2d 549 (Fla.1951); Dees v. State, 357 So.2d 491 (Fla. 1st DCA 1978); Thrifty Super Mkt., Inc. v. Kitchener, 227 So.2d 500 (Fla. 3d DCA 1969)); Gallagher v. L.K. Rest. & Motels, Inc., 481 So.2d 562 (Fla. 5th DCA 1986). Factors the trial court should consider in determining whether to reopen the case to allow presentation of additional evidence include whether the opposing party will be unfairly prejudiced and whether it will serve the best interests of justice. Amador v. Amador, 796 So.2d 1212 (Fla. 3d DCA 2001); Hernandez v. Cacciamani Dev. Co., 698 So.2d 927 (Fla. 3d DCA 1997); Silber; Bieley v. Bieley, 398 So.2d 932 (Fla. 3d DCA), review denied, 411 So.2d 380 (Fla. 1981); Akins v. Taylor, 314 So.2d 13 (Fla. 1st DCA 1975); see also Register v. State, 718 So.2d 350 (Fla. 5th DCA 1998).
Because the trial court summarily denied Robinson's motion, we are unable to determine why the trial court made that decision or what factors, if any, the trial court considered. Moreover, given the allegations of fraud made by Robinson to support her motion, we think an evidentiary hearing was essential for the trial court to properly determine whether to grant the request to present the testimony of Adams. See Robinson v. Kalmanson, 882 So.2d 1086, 1088 (Fla. 5th DCA 2004) ("A court can seldom determine the presence or absence of fraud without a trial or evidentiary proceeding.").
After the final judgment was entered, Robinson filed her Motion for Rehearing, New Trial, or Evidentiary Hearing, pursuant to rule 1.530, Florida Rules of Civil Procedure, once again alleging fraud as a basis for relief. Cetrano and Weiland argue that Robinson failed to demonstrate the trial court abused its discretion in denying the motion, primarily arguing cases discussing motions for relief from judgment made pursuant to rule 1.540, Florida Rules of Civil Procedure. This court and others have held that if a party files a motion pursuant to rule 1.540(b)(3), pleads fraud or misrepresentation with particularity, and shows how that fraud or misrepresentation affected the judgment, the trial court is required to conduct an evidentiary hearing to determine whether the motion should be granted.[7]See Seal v. Brown, 801 So.2d 993, 994-95 (Fla. 1st DCA 2001); St. Surin v. St. Surin, 684 So.2d 243, 244 (Fla. 2d DCA *782 1996); Estate of Willis v. Gaffney, 677 So.2d 949 (Fla. 2d DCA 1996); Dynasty Exp. Corp. v. Weiss, 675 So.2d 235, 239 (Fla. 4th DCA 1996); Townsend v. Lane, 659 So.2d 720 (Fla. 5th DCA 1995); S. Bell Tel. & Tel. Co. v. Welden, 483 So.2d 487, 489 (Fla. 1st DCA 1986) ("[W]here the moving party's allegations raise a colorable entitlement to rule 1.540(b)(3) relief, a formal evidentiary hearing on the motion, as well as permissible discovery prior to the hearing, is required."); Kidder v. Hess, 481 So.2d 984, 986 (Fla. 5th DCA 1986); Stella v. Stella, 418 So.2d 1029 (Fla. 4th DCA 1982); see also Robinson. Moreover, the courts have held that the hearing requirement applies when fraud is asserted as a grounds for relief under either rule 1.530 or 1.540, Florida Rules of Civil Procedure. See Stella. The motion filed by Robinson sufficiently alleges fraud and demonstrates how it affected the judgment, thereby satisfying the requirement for an evidentiary hearing under either rule 1.530 or 1.540. Therefore, we reject the arguments advanced by Cetrano and Weiland.
We conclude that Robinson was entitled to an evidentiary hearing based on the motion she filed prior to entry of final judgment and the motion she filed thereafter. We, therefore, reverse the order summarily denying Robinson's Motion to Reopen Trial For Newly Discovered Evidence and her Motion for Rehearing, New Trial, or Evidentiary Hearing and remand for an evidentiary hearing. Should the trial court determine that fraud occurred as Robinson alleged, we believe that a new trial would be warranted.
REVERSED and REMANDED.
ORFINGER and LAWSON, JJ., concur.
NOTES
[1] "Michael" is the correct name of the decedent's female friend, but the parties refer to her as "Weiland" and so shall we.
[2] The other issues raised by Robinson are: (1) the original Sun Life annuity change form is not effective because it was never received by Sun Life; (2) the G.E. annuity change form was not effective because it was not made during John S.'s lifetime; (3) the court erred in excluding evidence that Weiland had been terminated from her employment for theft; and (4) the trial court's delay in ruling was excessive and resulted in a judgment contrary to the evidence. As to these issues, we affirm without further discussion.
[3] See Baptist Mem'l Hosp., Inc. v. Bell, 384 So.2d 145, 146 (Fla.1980) ("The discretionary power to grant or deny a motion for new trial is given to the trial judge because of his direct and superior vantage point.... In reviewing this type of discretionary act of the trial court, the appellate court should apply the reasonableness test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion."); Harlan Bakeries, Inc. v. Snow, 884 So.2d 336, 340 (Fla. 2d DCA 2004) ("For a verdict to be against the manifest weight of the evidence, so as to warrant a new trial, the evidence must be clear, obvious, and indisputable; where there is conflicting evidence, the weight to be given that evidence is within the province of the jury."); Phillips Buick-Pontiac-GMC, Inc. v. Dallon, 602 So.2d 594, 596 (Fla. 5th DCA) (holding that a verdict is against the manifest weight of the evidence when the evidence is "clear, obvious, and indisputable"), review denied, 613 So.2d 2 (Fla.1992); Jones v. Stevenson, 598 So.2d 219 (Fla. 5th DCA 1992) (same); Perenic v. Castelli, 353 So.2d 1190 (Fla. 4th DCA 1977), cert. denied, 359 So.2d 1211 (Fla.1978).
[4] See Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla.1999); Smith v. Brown, 525 So.2d 868, 870 (Fla. 1988); Baptist Mem'l Hosp., Inc.; Hahn v. Medeiros, 858 So.2d 1242 (Fla. 5th DCA 2003); see also Southwin, Inc. v. Verde, 806 So.2d 586, 587 (Fla. 3d DCA 2002) ("The standard of review for the denial of a motion for new trial is whether or not the trial court abused its discretion."); Reid v. Med. & Prof'l Mgmt. Consultants, Inc., 744 So.2d 1116 (Fla. 1st DCA 1999) (holding that that the trial court did not abuse its discretion in denying a motion for new trial based on the grounds the verdict was against the manifest weight of the evidence); Roach v. CSX Transp., Inc., 598 So.2d 246, 249 (Fla. 1st DCA 1992) (holding that trial court did not abuse its discretion in denying motion for new trial).
[5] See Brown, 749 So.2d at 497; Smith, 525 So.2d at 870; Bell; Hahn; see also Estate of Despain v. Avante Group, Inc., 900 So.2d 637, 643 (Fla. 5th DCA 2005) ("We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact. The deference that appellate courts afford findings of fact based on competent, substantial evidence is an important principle of appellate review.").
[6] Brown; Smith; Hahn.
[7] We note that although Robinson cited rule 1.540 in her motion to reopen, she primarily argued that the motion was made prior to entry of final judgment as a matter of trial procedure. We believe that her cite to the rule was an alternative argument. As we will explain, under either argument Robinson was entitled to an evidentiary hearing.