# Third District Court of Appeal

## State of Florida

Opinion filed June 01, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D15-527 & 3D15-513
Lower Tribunal Nos. 10-27170A & 10-29197

_____

**Timothy Smith,**
Appellant,

vs.

**The State of Florida,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Stephen Millan, Judge.

Carlos J. Martinez, Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Jonathan Tanoos, Assistant Attorney General, for appellee.

Before SUAREZ, C.J., and ROTHENBERG and EMAS, JJ.

ROTHENBERG, J.

The defendant, Timothy Smith, appeals from the revocation of his probation and the resulting sentences based on the trial court's finding that he violated Condition Five of his probation by committing two new law violations—unlawful assembly in violation of section 870.02, Florida Statutes (2014), and trespass after warning in violation of section 810.09(2)(b), Florida Statutes (2014). For the reasons that follow, we reverse the trial court's ruling that the defendant violated his probation by committing the new law violation of unlawful assembly, but affirm the trial court's ruling that the defendant violated his probation by committing the new law violation of trespass after warning. Because we are unable to determine whether the trial court would have revoked the defendant's probation solely for committing the new law violation of trespass after warning, we remand for reconsideration and for entry of a written order.

**FACTUAL AND PROCEDURAL HISTORY**

The defendant pled guilty to robbery by sudden snatching and was sentenced to two years in prison followed by three years of probation in lower tribunal Case No. 10-27170A. He also pled guilty to seventeen counts of carrying a concealed firearm and one count of unlawful possession of a short-barreled shotgun in lower tribunal Case No. 10-29197 and was sentenced to two years in prison followed by three years of probation, to run concurrently with the sentence imposed in Case No. 10-27170A. After the defendant was released from prison, he violated his

2

probation and was sentenced to two years in prison followed by three years of probation in both cases.

After the defendant completed the incarceration portion of his sentence and shortly after he began serving the probationary portion of his sentence, he was arrested for unlawful assembly and trespass after warning. The State filed an affidavit of violation of probation in both cases, alleging, in part, that the defendant violated Condition Five of his probation by committing these two new law violations.[1]

At the probation violation hearing, the evidence viewed in the light most favorable to the State established the following. Officer Hinson of the City of Miami Police Department observed the defendant and twelve other young men congregating in the common areas of the Liberty Square housing complex, a Housing and Urban Development complex. The defendant is a known gang member of the "13th Avenue Hotboys," which usually congregates in that area, and most of the other men are also known gang members. Officer Hinson testified that

---

[1] Condition Five provides that the defendant "will live without violating the law." The affidavits of violation of probation also alleged that the defendant violated Condition Five of his probation by committing the new law offense of loitering and prowling, and Condition Six of his probation by associating with persons engaged in criminal activity. Following the probation of violation hearing, the trial court ruled the State failed to establish that the defendant committed the new law violation of loitering and prowling or that the defendant violated Condition Six of his probation.

3

the area where the men were congregating is known for drug activity, gang activity, arrests, and violent crimes, including shootings.

While observing these men for approximately twenty minutes, Officer Hinson did not see any illegal activity, could not overhear their conversations, and did not see anything that would be considered menacing in nature. Basically, Officer Hinson observed thirteen young men, who are mostly known gang members, standing and talking in an area known for gang activity, drug sales, and violent crimes.

After observing the men for approximately twenty minutes, Officer Hinson approached the group and smelled marijuana, but did not see anyone smoking. Moreover, Officer Hinson's testimony does not reflect that he found any drug paraphernalia or marijuana butts on or near any of the men. Officer Hinson's search of the thirteen men revealed no weapons, but did reveal suspected cocaine on one of the men and misdemeanor amounts of marijuana on two other men. The defendant was not in possession of any drugs or weapons.

Officer Hinson testified that approximately three to four days prior to observing the thirteen young men congregate, he encountered the defendant trespassing at the Liberty Square housing complex and gave him a trespass warning. When Officer Hinson approached the group of men, he confirmed that the defendant did not live in the Liberty Square housing complex, and asked the

4

defendant what he was doing there. In response, the defendant stated that he was "just walking up, talking to his homeboys." Officer Hinson also spoke to Ms. Darden, the woman who lives in the unit across from where the group of men were congregating, and confirmed that the defendant was not visiting her and that she had not invited him to the Liberty Square housing complex. Officer Hinson explained that pursuant to HUD's rules, when someone visits a HUD resident, the visitor must remain at the resident's location at all times.

Also, at the probation violation hearing, during the testimony of Ms. Betty Jones, the HUD manager overseeing the Liberty Square housing complex, the State introduced a notarized trespass enforcement agreement that was executed in 2011 by Gregg Fortner, who was the Executive Director of the Miami-Dade Public Housing Agency at that time. The trespass enforcement agreement authorized officers of the City of Miami Police Department to enforce trespass laws set forth in section 810.09, and to issue trespass warnings, direct trespassers to leave the premises, and arrest trespassers. Defense counsel initially objected to the admission of the trespass enforcement agreement, arguing that Ms. Jones could not authenticate the document, but thereafter, withdrew his objection by stating, "Judge, I'll tell you what, let it in."

Following the closing arguments, the trial court reserved ruling. Approximately five days later, the defendant moved to reopen his case to introduce

the deposition testimony of Ms. Darden, who was subpoenaed for the probation violation hearing but failed to appear. The defendant asserted that his motion to reopen was timely because the trial court had not yet ruled on the alleged probation violations, and that Ms. Darden's testimony would corroborate Mr. Pierre's and the defendant's testimony that they were not part of the group of men that had congregated in front of Ms. Darden's unit. The motion also asserted that defense counsel erred by not having Ms. Darden's deposition with him at the probation violation hearing, which he could have sought to introduce at the probation violation hearing, and the State would not have been surprised by Ms. Darden's deposition testimony because she was deposed by two Assistant State Attorneys with no defense counsel present.

At a subsequent hearing, the trial court addressed and denied the defendant's motion to reopen the case. In doing so, the trial court noted that at the probation violation hearing, defense counsel did not inform the trial court that Ms. Darden was subpoenaed for the hearing but failed to appear, request a continuance, or ask to introduce Ms. Darden's deposition. The trial court then ruled that the State had established by a preponderance of the evidence that the defendant violated his probation in both cases by committing the new law violations of unlawful assembly and trespass after warning.

In Case No. 10-29197, the defendant was sentenced to five years in prison as to all counts except for Count 13, and for Count 13, he was sentence to 81.9 months in prison, followed by three years of probation. As to Case No. 10-27170A, the defendant was sentenced to five years in prison for robbery by sudden snatching, with the sentences in both cases to run concurrently. The defendant's appeal followed.

## ANALYSIS

The defendant contends that the trial court abused its discretion by: (1) denying the defendant's motion to reopen his case to introduce Ms. Darden's deposition testimony; (2) allowing Officer Hinson to testify that the area where the defendant and the other young men congregated is known for violent crimes, drug activity, and gang activity; and (3) finding that the State established by a preponderance of the evidence that the defendant committed the new law violations of unlawful assembly and trespass after warning. For the reasons that follow, we conclude that the trial court did not abuse its discretion by denying the defendant's motion to reopen his case; in its evidentiary ruling; or by finding that the State had established that the defendant committed the new law violation of trespass after warning. However, we agree with the defendant that the State failed to establish that the defendant committed the new law violation of unlawful assembly. We therefore reverse that specific finding by the trial court, and we

7

remand for further proceedings consistent with this opinion and for the entry of a written order.

## I. **Denial of defendant's motion to reopen his case**

The defendant contends that the trial court abused its discretion by denying his motion to reopen his case to introduce Ms. Darden's deposition testimony. We disagree.

"The decision to reopen a case lies within the discretion of the trial court and will not be disturbed on appellate review absent an abuse of discretion." Donaldson v. State, 722 So. 2d 177, 181 (Fla. 1998); see also Burk v. State, 497 So. 2d 731, 733 (Fla. 2d DCA 1986) ("Whether to allow the reopening of a case is a question involving sound judicial discretion of the trial court, a discretion rarely interfered with at the appellate level.").

In the instant case, the defendant moved to reopen his case five days after the case was technically closed—the parties had presented their evidence, the parties had submitted their closing arguments, the witnesses were released, and the case had been submitted to the trial court for its determination. See Donaldson, 722 So. 2d at 181 ("Where the case is not technically closed (i.e., counsel have not begun closing argument and the case has not been submitted to the jury), the denial of a defendant's motion to reopen the case will be reversed if the motion was timely and a proper showing has been made as to why the evidence was omitted.").

8

We also note that in his motion, the defendant asserted that he was moving to reopen his case because Ms. Darden failed to appear despite being properly subpoenaed. However, in addressing the reasonableness of the defendant's explanation, the trial court specifically noted that when the court asked the parties at the probation violation hearing if they had any other evidence to present, defense counsel failed to inform the trial court that he had subpoenaed Ms. Darden but she had failed to appear, or that he wanted to introduce her deposition testimony in lieu of her live testimony. See Suarez v. State, 478 So. 2d 1173, 1174 (Fla. 2d DCA 1985) (holding that the trial court did not err by refusing to allow the defendant to reopen the case to receive additional testimony where the evidence was not newly discovered evidence and the "deposition of the witness whose testimony was proffered had been taken prior to trial, and the transcript of the deposition had been in the possession of [the defendant's] attorney prior to trial"); Sylvia v. State, 210 So. 2d 286, 289 (Fla. 3d DCA 1968) (holding that the trial court did not abuse its discretion by denying defendant's motion to reopen his case made after he had rested where "[i]t is apparent that the trial court exercised due diligence in determining what the additional evidence would disclose, and determined that it was something that could have been discovered prior to trial").

Also, the State would have been prejudiced if the trial court had granted the defendant's motion to reopen the case because the State tailored its closing

9

argument to the evidence presented at the probation violation hearing, and the State would not have been able to recall any of its witnesses to rebut Ms. Darden's testimony because the witnesses had been released. See Register v. State, 718 So. 2d 350, 352 (Fla. 5th DCA 1998) (noting that in ruling on a motion to reopen a case to submit additional evidence, the trial court should consider the effect of allowing the evidence to be admitted). Although the trial court would have been within its discretion to reopen the case under the circumstances presented herein, we cannot find that the trial court abused its discretion by denying the defendant's motion to reopen his case.[2]

## II. Admission of evidence that the area where the defendant and the twelve other young men gathered is known for violent crimes, drug activity, and gang activity

The defendant contends that the trial court abused its discretion by allowing Officer Hinson to testify that the area where the defendant and the other men gathered is known for violent crimes, drug activity, and gang activity. We disagree

---

[2] The defendant contends that if this Court concludes that the trial court did not abuse its discretion by denying his motion to reopen his case, defense counsel was ineffective on the face of the record by not admitting Ms. Darden's deposition testimony at the probation violation hearing. We decline to address the defendant's claim of ineffective assistance of trial counsel on direct appeal. See Fletcher v. State, 168 So. 3d 186, 206 (Fla. 3d DCA 2015) (holding that claims of ineffective assistance of counsel "are rarely cognizable on direct appeal, and will be considered only when (1) the ineffectiveness is apparent on the face of the record, and (2) it would be a waste of judicial resources to require the trial court to address the issue in postconviction proceedings").

as the evidence was relevant to establish at least one of the elements of unlawful assembly.

One of the elements that the State must establish for the offense of unlawful assembly is that three or more individuals "assemble[d] in such a manner as to give rational, firm, and courageous persons in the neighborhood of the assembly a well-grounded fear of a breach of the peace." State v. Simpson, 347 So. 2d 414, 415 (Fla. 1977). Officer Hinson's testimony was relevant to establish that "rational, firm, and courageous persons in the neighborhood" would have a "well-grounded fear of a breach of the peace" in light of the fact that the area where the men assembled was known for gang activity, drug sales, arrests, and violent crimes, including a recent shooting of a male who lived across the street. Accordingly, we conclude that the trial court did not abuse its discretion by admitting this testimony.

## III. **Section 870.02 Unlawful Assembly**

Section 870.02 provides as follows: "If three or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall be guilty of a misdemeanor of the second degree . . . ." In State v. Simpson, 347 So. 2d 414 (Fla. 1977), the Florida Supreme Court construed section 870.02 "to prohibit (1) an assembly of three or more persons who, (2) having a **common** unlawful purpose, (3) assemble in such a manner as to give rational, firm, and

11

courageous persons in the neighborhood of the assembly a well-grounded fear of a breach of the peace." Id. at 415 (emphasis added).

Based on the evidence presented, although the assembly of the thirteen young men, most of whom were known gang members, may have given "rational, firm, and courageous persons in the neighborhood of the assembly a well-grounded fear of a breach of the peace," the State failed to establish by a preponderance of the evidence that the group of men had assembled for a "common unlawful purpose." As stated earlier, the evidence established that while the men were assembled, Officer Hinson did not observe any illegal activities, guns, or menacing conduct. Further, the fact that Officer Hinson merely smelled marijuana when he approached the group does not indicate that they were assembled for a "common unlawful purpose." Finally, contrary to the State's assertion, there was no evidence, direct or by inference, that the men had assembled at the Liberty Square complex for the purpose of trespassing. Therefore, based on the evidence presented, we conclude that the State failed to establish by a preponderance of the evidence that the defendant violated his probation by committing the new law violation of unlawful assembly.

## IV. Section 810.09(2)(b) Trespass After Warning

Section 810.09(2)(b) provides that an individual commits a first degree misdemeanor if he "defies an order to leave, personally communicated to the

offender by the owner of the premises or **by an authorized person** . . . ." (emphasis added). In the instant case, the evidence in the light most favorable to the State showed that the defendant did not live at the Liberty Square housing complex, the defendant defied Officer Hinson's prior trespass warning by returning to the Liberty Square housing complex, and the defendant was not invited on to the Liberty Square premises by a resident of Liberty Square. Although the defendant introduced evidence to the contrary, we note that the trial court, as factfinder, was free to reject the contrary evidence. Coveny v. State, 26 So. 3d 663 (Fla. 3d DCA 2010). The trial court was free to reject both the defendant's and Mr. Pierre's testimony that they were at Liberty Square to visit the mother of Mr. Pierre's baby because on the day of the incident, when asked by Officer Hinson why he was at Liberty Square, the defendant told Officer Hinson that he was there to talk to his "homeboys."

The defendant further argues on appeal that the trial court abused its discretion by allowing the State to introduce the trespass enforcement document into evidence because it was not properly authenticated and it constitutes inadmissible hearsay. We find no error in the admission of this document.

First, defense counsel did not argue below that the trespass enforcement document constituted inadmissible hearsay, and therefore, this argument was not preserved for appellate review. See Connolly v. State, 172 So. 3d 893 (Fla. 3d

13

DCA 2015) (en banc) ("To preserve error for appellate review, a contemporaneous, specific objection must be made during trial."). Second, following defense counsel's initial objection based on lack of authentication, defense counsel withdrew his objection to the admission of the trespass enforcement document by stating, "Judge, I'll tell you what, let it in." Finally, even if defense counsel had not withdrawn his objection, the trespass enforcement document was admissible as a self-authenticating document under section 90.902(2), Florida Statutes (2014), and therefore, did not require extrinsic evidence to prove its authenticity. Accordingly, based on the evidence presented at the probation violation hearing, we conclude that the State established by a preponderance of the evidence that the defendant violated his probation by committing the new law violation of trespass after warning.

## CONCLUSION

We conclude that the trial court did not abuse its discretion by denying the defendant's motion to reopen his case and by permitting Officer Hinson to testify as to the violence, gang activity, drug activity, and arrests in the area where the defendant and the other men had assembled. We additionally conclude that the State established that the defendant trespassed after warning based on Officer Hinson's authority to enforce trespass laws at the Liberty Square housing complex and Officer Hinson's testimony that he gave the defendant a trespass warning just

14

three or four days earlier. We, however, conclude that the State failed to establish the new law violation of unlawful assembly because it failed to establish that the men assembled having a "common unlawful purpose." As we have concluded that the State failed to establish the new law violation of unlawful assembly and because we are unable to determine whether the trial court would have revoked the defendant's probation solely for having committed the new law violation of trespass after warning, we remand for reconsideration and for entry of a written order.

Affirmed in part, reversed in part, and remanded.