HAZOURI, J.
James Santiago appeals a final judgment finding him to be a sexually violent predator pursuant to the Sexually Violent Predator Act,[1] also known as the Jimmy Ryce Act. This followed a jury verdict. Santiago argues that the trial court abused its discretion when it failed to permit him to reopen his case so that false testimony *879 presented by the state to demean the credentials of one of Santiago’s experts could be countered and corrected prior to the jury beginning its deliberations. We agree and reverse for a new trial.
Santiago was declared a sexually violent predator in 2002. The jury trial in question occurred in 2007. Its purpose was to determine whether Santiago continued to qualify as a sexually violent predator, i.e., whether he was likely to reoffend should he be released from commitment.
Santiago called Natalie Novack Brown, Ph.D., a clinical psychologist who is licensed in the state of Florida and Washington. She does forensic evaluations at the request of attorneys and on referral from the courts, especially in Seattle. She is a certified sex offense treatment provider in the state of Washington. She was at one time a sexually violent predator evaluator for the State of Florida, Department of Children and Families (DCF), where she did risk assessments. She is also a member of the Association of State and Provincial Psychology Boards (ASPPB), as well as other associations. She has done over 300 risk assessments in the civil commitment context.
Dr. Brown performed two evaluations of Santiago. The first was done when she worked for DCF and Santiago was about to leave prison. She found Santiago to be an exhibitionist, having a history of poly-substance dependence, malingering because of his self report of fabricated symptoms of schizophrenia, and antisocial personality disorder. She found paraphi-lia not otherwise specified. She reevaluated Santiago in 2006. Based upon her reevaluation in 2006, she opined that he was not at risk to recommit sexual violence, nor was there any indication of pedophilia. Dr. Brown was the only expert presented by Santiago who was permitted to give an opinion as to Santiago’s risk for reoffend-ing.
After Santiago’s case had rested, the state recalled forensic psychologist Dr. Amy Swan. During the state’s case, Dr. Swan opined that Santiago was at extremely high risk to reoffend. The state’s purpose for recalling Dr. Swan was to impeach the credentials and credibility of Dr. Brown. Dr. Swan was permitted to testify, over objection, that she was a member of the ASPPB and a delegate from Florida to that Board. She was further permitted to testify over objection that she had never seen Dr. Brown at any of the meetings of this organization and that Dr. Brown was not a member of the organization. Additionally, through the testimony of Dr. Swan, the state introduced into evidence a letter from the ASPPB,[2] which stated that Dr. Brown was not currently a member of the ASPPB and not a member of the licensing board.
After the jury was instructed, but prior to it retiring for deliberation, outside its presence, the following colloquy took place:
MR. FLEISCHMAN [counsel for Santiago]: This is outside the presence of the jury, just for the record. I just got a call from Natalie Brown. I had left a message on her phone because I knew that she was in flight. She just landed in the Seattle airport. She’s faxing me her membership card[3] that’s good *880 through 2008 in the Association of State and Provisional (sic) Psychology Boards showing that she is, in fact, a member contrary to what Dr. Swan alleged, so I’m going to ask the Court, although unusual—
THE COURT: It is unusual. Let me ask the State what they think.
MS. KANNER [counsel for the state]: About what?
THE COURT: I mean, we closed the case, it’s closed, but it’s up to you.
MS. KANNER: Well, what’s he want to do?
THE COURT: He wants to show that she’s qualified because the other woman said she wasn’t; is that correct?
MR. FLEISCHMAN: I mean, basically Dr. Swan is saying she’s out and out lying, that she’s not a member, and it turns out that she is.
MS. KANNER: It’s not really Dr. Swan, it’s the organization is saying she’s not a member. They issued a flat out statement saying that she doesn’t belong to their — the executive officer, that she doesn’t belong to them.
THE COURT: Was that introduced into evidence?
MS. KANNER: Yes.
THE COURT: Okay.
MR. FLEISCHMAN: It’s saying—
THE COURT: Just because she has a card—
MR. FLEISCHMAN: It says: Without more information it’s not possible to estimate whether this Natalie Brown holds — because there may be more than one Natalie Brown, but she’s saying she does hold the certificate. She’s faxing me her membership card.
THE COURT: I think it’s too late to introduce something now, the case is closed.
MS. KANNER: We’ve already charged the jury. I’m uncomfortable allowing more evidence in at this point.
THE COURT: I’m not going to allow it. Unfortunately, I understand it, I sympathize with him, but the jury’s ready to go back there.
MR. FLEISCHMAN: Judge, the only thing that I would, just to make a record, not a reargument—
THE COURT: You can make the record.
MR. FLEISCHMAN: It’s a falsehood. In other words, it’s not true, she is a member of that Board. It leaves the jury — In this case, it’s not just argument, it’s a complete lie. It leaves the jury with a misleading idea that she lied, which is false.
THE COURT: What’s your theory now, it’s the end of the case?
MR. FLEISCHMAN: Well, I agree it is unusual. I’ve never had it come up before.
THE COURT: I don’t know how you can introduce — I respect you for what you’re doing. I mean, you’ve got to do everything you can for your client, that’s what I did when I was a lawyer.
MR. FLEISCHMAN: I would ask you to let us reopen for that sole issue, to allow me to introduce it, and if the State wants to reargue any points on it I would have no objection to that, and then to just re-close and allow them to deliberate, barring that I would move for a mistrial also if that’s not allowed.
THE COURT: What’s the mistrial?
MR. FLEISCHMAN: Because they’re saying—
*881 THE COURT: Because you didn’t have the evidence to present at the time; is that what you’re telling me?
MR. FLEISCHMAN: Well, there’s been rebuttal and she was in flight. I left her a message as soon as I learned this was an issue and I think it paints a false picture of Dr. Brown because it’s contrary to what Dr. Swan in this letter — Actually, this letter didn’t say with certainty that she’s not, it actually says, without more information.
THE COURT: They’re going to read the letter.
MR. FLEISCHMAN: But it does paint—
THE COURT: It doesn’t say without certainty. I don’t even think that’s going to influence the case. What do you have to say?
MR. FLEISCHMAN: And I did object to that letter coming in originally.
THE COURT: Well, did I rule on it?
MR. FLEISCHMAN: Yes, you overruled the objection.
MS. KANNER: Hearsay is allowed in these cases, as you well know. Judge, at this juncture and that may be true, but Dr. Brown could have stayed for rebuttal, rebuttal, rebuttal, whatever. I mean, she sat here through all the rest of the trial and was prepared to help Mr. Fleischman through the trial. I don’t know what to tell you, we’ve charged—
THE COURT: Well, you’re objecting to him entering this, the case is finished.
MS. KANNER: Yes. We’ve charged the jury. I think even if we hadn’t charged the jury he might have an argument, but I can’t fathom at this point to reopen the case at this juncture. I mean, but for me correcting that piece of paper and her needing a cigarette they would be back there deliberating.
The trial court denied Santiago’s counsel’s request.
“The decision to reopen a case lies within the discretion of the trial court and will not be disturbed on appellate review absent an abuse of discretion.” Donaldson v. State, 722 So.2d 177, 181 (Fla. 1998).
Although the decision to allow a case to be reopened involves sound judicial discretion, not usually interfered with on the appellate level, a denial will be reversed where the request is timely made and the jury will be deprived of evidence which might have had significant impact upon the issues to be resolved.
Delgado v. State, 573 So.2d 83, 86 (Fla. 2d DCA 1990) (citation omitted).
The supreme court held in Donaldson:
Where the case is not technically closed (i.e., counsel have not begun closing argument and the case has not been submitted to the jury), the denial of a defendant’s motion to reopen the case will be reversed if the motion was timely and a proper showing has been made as to why the evidence was omitted. Steffanos v. State, 80 Fla. 309, 86 So. 204 (1920) (holding that the case should be reopened where “the cause ha[s] not proceeded so far that the ends of justice would [be] defeated, or the orderly process of the court disturbed”)....
Donaldson, 722 So.2d at 181-82 (citations omitted). Steffanos’s holding was in regards to timeliness of a request by the defendant to reopen his case to allow him to present testimony that would prove his innocence. In it the court stated:
The motion was to reopen the case, but the case was not technically closed. The judge had not charged the jury; the counsel had not begun the argument; the case had not been submitted. It had *882 only reached that stage where each party announced that it rested; that there was no more evidence to be introduced. The court then took a recess. Upon convening on Monday following, the motion was made. Whatever delay or confusion may have resulted in the trial of the case by permitting the witnesses to testify might have been fully requited by the establishment of defendant’s innocence, for it was the province of the jury to weigh the evidence introduced and place a value upon its probative force.
Even if the case had been technically closed, it would have been an abuse of discretion to refuse to open the case and permit the evidence to be introduced, upon the proper showing being made as to why it had been previously omitted. See 38 Cyc. 1361.
While the record does not disclose that any showing was made when the motion was submitted, yet the cause had not proceeded so far that the ends of justice would have been defeated, or the orderly processes of the court disturbed, by an admission of the testimony.
The refusal to allow the evidence to be introduced under the circumstances was an abuse of discretion, which was harmful to the defendant, and was therefore error.
Steffanos, 86 So. at 205-06 (emphasis added).
In Silber v. Cn’R Industries of Jacksonville, Inc., 526 So.2d 974 (Fla. 1st DCA 1988), a civil case, the trial court stated the following principle on reopening cases:
As a general rule, the trial court has broad discretion to allow a party to reopen its case and present additional evidence, whether it does so after a party rests, after the close of all evidence, or even after having directed a verdict for one party; and such ruling by the trial court, absent a showing of abuse of discretion, will not be overturned on appellate review. Indeed, it may even amount to an abuse of discretion not to permit a party to reopen its case in some circumstances. But the trial court’s discretion is not unlimited, for it may allow reopening only “where this can be done without injustice to the other party.”
Id. at 978 (citations omitted).
The circumstances in this case establish a proper basis for presenting additional evidence due to the state’s presentation of evidence that misled the jury as to the credibility of Santiago’s expert witness who testified to his progress from a high risk sexual predator to one of low risk. To permit the state to impugn the credentials and credibility of Santiago’s only expert witness on the issue of his likelihood to reoffend in the manner in which it was done in this case is an abuse of discretion. We cannot consider this harmless error. To further compound the error, the state, in its final argument, told the jury Dr. Brown lied. “She stood here and lied to you, and if you have any questions about that listen to the transcript. She told you she was on that Board and she clearly isn’t, it’s the tip of the iceberg.” We, therefore, reverse and remand for a new trial.
Santiago asserts two other points on appeal. We find it unnecessary to address these two issues because we are reversing and remanding for a new trial.

Reversed and Remanded.

FARMER and CIKLIN, JJ., concur.

. §§ 394.910-394.932, Fla. Stat. (2007).

. The letter introduced was from Stephen T. DeMers, an executive officer of the ASPPB sent to "to whom it may concern" and stated: “[l]o the best of our knowledge and information, Natalie Brown from Florida is not currently an individual member of ASPPB, nor a member of an ASPPB member licensing board. Without more information it is not possible to ascertain whether this Natalie Brown holds, or has ever held a Certificate of Professional Qualification (CPQ) from ASPPB."

. The faxed card is the Certificate of Professional Qualification in Psychology for Natalie *880 J. Novick-Brown which would expire on 4/11/2008, after the trial was held.