DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JONATHAN JOSEPH COVELLO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-765

[October 15, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Gary L. Sweet, Judge; L.T. Case No. 562010CF003923AXXXXX.

Carey Haughwout, Public Defender, and Emily Ross-Booker, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Nancy Jack, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Jonathan Joseph Covello appeals his judgment and sentence after a jury found him guilty of burglary of a dwelling with an assault while masked, home invasion robbery while masked, and grand theft. On appeal, Covello argues that the trial court erred in: (1) denying his motion to reopen his case after an item of evidence was misrepresented by the State; (2) denying his motion for judgment of acquittal as to the burglary of a dwelling with an assault and grand theft counts; and (3) failing to take any action on the count of home invasion robbery while masked in violation of double jeopardy. We reverse the trial court's denial of Covello's motion to reopen his case. We also reverse Covello's conviction for grand theft because the evidence supported a conviction only for first degree petit theft. We affirm without discussion the denial of the motion for judgment of acquittal as to the burglary of a dwelling with an assault while masked. The double jeopardy issue is rendered moot by our reversal for a new trial; however, we write to assist the trial court on remand by explaining why a conviction for the burglary of a dwelling with an assault while masked and

home invasion robbery while masked charges violate double jeopardy.

*Factual Background and Trial Proceedings*

At trial, the victim of all three of the charges testified that she was home alone at night, when she was awoken by someone standing next to her bed telling her to wake up. It was dark in the room, but the victim said that she could tell the intruder was young. He was wearing a black hooded sweatshirt and jeans. The hood on the sweatshirt was pulled over his head so that it covered most of his face.

The victim testified that she and the intruder went to various rooms in her house, and the intruder took items, such as her grandson's Nintendo DS, a video camera, a camera and case, a necklace, a cell phone, and some keys. Although her bedroom had been dark, the victim testified that when the two were in the kitchen she could see better because there were no blinds on the kitchen window and there was a streetlight outside. She could see that the intruder had a "real short haircut," was not very tall, had no bangs hanging down, and appeared to have a "crew cut."

After the two walked around the house for about ten minutes, the intruder left the victim's home out of the back door, telling her to "have a nice night now, ma'am, okay?" The victim locked the door and called 911.

Once officers arrived, the victim explained that her cell phone was missing. The officers used the GPS on the phone to track its location to a house on Hernando Street. An officer brought the victim to that location to conduct a show up.

While the investigation was beginning, Officer T responded to the area and stopped two young men walking in the road who seemed suspicious. The individuals were Thomas and Sizemore. Officer T testified that neither of the two males had anything in their hands, but Sizemore was wearing swimming trunks with no shirt or shoes. Officer T let the two go after taking down their information and the location where they were heading, which was a house on Hernando Street.

Officer G, a K-9 officer, also responded to the victim's house, and began to track the scent left by the intruder with his K-9. Officer G testified that his K-9 tracked the scent from the victim's back door to a body of water nearby, resumed the track at a different location, and ended in front of the same house on Hernando Street to which Thomas and Sizemore said they were heading. Once tracked to the house on Hernando Street, Officer G was informed that there was someone in the attic of the house. Officer G

2

went to the attic, announced his presence, crawled up, and eventually apprehended Covello after he "popped up" and took off to the other side of the attic.

J.B., a friend of Thomas, testified that she went to Thomas's house on Hernando Street on the night of the incident to visit him. When she and her friends arrived at his house, no one was there, so they went inside and waited on the couch. She testified that about five minutes after she arrived, Thomas and Sizemore arrived home, and then a few minutes later, Covello arrived. J.B. stated that Covello was "sweaty and panicking when he arrived," did not have anything in his hands, and was wearing only jeans and no shirt. She stated that, when he came in, Covello said "I just robbed somebody" and ran into the bedroom. He then ran out of the bedroom and said that the "cops are here, I'm going to the attic." J.B. testified that after hearing that, she decided she and her friends should leave, but when they started to leave the house, police officers were already in the driveway. She told the officers that Covello was hiding in the attic.

Outside the house, Detective C spoke to Sizemore and Thomas. He testified that Sizemore was "soaking wet" and "drenched," like he had just been swimming in his clothes, not just sweating. He further testified that Thomas was also wet and his legs were covered in grass and dirt.

At the house on Hernando Street, Officer M conducted a show-up with the victim using Thomas, Sizemore, and Covello. Thomas was shown first to the victim, but she said that he was not the perpetrator because he was too tall with a lot of hair. Sizemore was shown next, but the victim said he was not the perpetrator because he was shorter with "too much hair" and his hair was blonde (suggesting the perpetrator's hair was darker). The third person she was shown was Covello. Unlike Thomas and Sizemore, Covello was in handcuffs during the show-up. The victim said she was "pretty sure" that he was the person in her home based on his build and his hair.

The State entered a photograph of Covello into evidence during its examination of Officer G. After making an in-court identification of Covello as the person he found in the attic, the State attempted to lay the foundation for the photograph of Covello:

> Q:    Officer, I'm showing you what's been previously marked as State's exhibit 51, do you recognize that?
>
> A    Yes.

3

Q:    Okay, and what is that?

A:    That is a picture of the suspect.

Q:    Ah, and by, by suspect you mean the person you just pointed to, right?

A:    Yes.

Q:    Okay. And the hairstyle in this photograph, is it similar to how it looks today?

A:    Yes.

Q:    Okay. And was this person the way he looked on December 1st of 2010 when you apprehended him in the attic?

A:    Yes.

When the State sought to enter the photograph into evidence, Covello objected. At sidebar, Covello argued that the photograph in the State's exhibit had been excised from a larger picture, he was not sure when the picture was taken, and asked to know when the picture was taken for potential impeachment purposes. The State responded that the exhibit was excised from Covello's booking photo, so it did not want to show the remainder of the picture since it showed Covello in his jail clothes. The State then represented:

Court:    So [exhibit 51] was the date of his arrest?

State:    Yeah.

Defense:  So that's your, your representation. I'll go with that if that's. . .

State:    Yes, I mean. . .

Defense:  What they say. Okay, good enough.

State:    I'll, but, but I wanna make sure that there's no, because if, if you were also wanting for impeachment he's gonna answer it's his booking photo, so I just wanna make sure that's not the avenue you intend to go and not expect him to, no, okay, I just wanna make sure.

4

Defense:   No.

The photograph was admitted into evidence as State's exhibit 51.

During its closing argument, the State referred to State's exhibit 51 as follows:

> Now Mister Sizemore, they want you to believe he must be the culprit, but [the victim] was specifically asked did this person have bangs and if you look at this picture of Mister Sizemore that was taken the night of the incident and this is State's exhibit 49 for the record ah, he has hair nothing like Jonathan Covello.   Nothing like it.   And you have a picture in that evidence of Mist, what Mister Covello's hair *looked like on that night*.   It looks nothing like this.
>
> . . . .
>
> Short, shaved hair and this, again this came out as evidence, *this was the night of the incident*.   The night of the incident, nothing like Brett Sizemore, nothing like it.

(emphasis added).

After closing arguments, but before the jury instructions were given, Covello brought an issue with State's exhibit 51 to the trial court's attention.   Covello's attorney stated that Covello had just shown him his actual booking photograph taken the night of his arrest, and pointed out that State's exhibit 51 was excised from a photograph taken when Covello had been transported from a different county jail only a few days prior to the trial.[1]   Based on this information, defense counsel asked to reopen his case, for Covello to testify in a limited fashion and to lay the foundation to introduce his actual booking photograph from the night he was arrested. Defense counsel stated that Covello understood that by taking the stand to lay the foundation, he would be open to impeachment based on his prior convictions.   Upon inquiry, Covello testified that he had his booking photograph in his property locker at the jail at the beginning of trial, but that he was able to retrieve it from his property locker only the night before his proffer of testimony.

---

[1] Covello was held in a jail in another county during trial and was transported between jails on more than one occasion.   For security reasons, a photograph was taken of him each time he was transported between jails.

The State argued that it would be "borderline ludicrous" to allow Covello to reopen his case, that the officer authenticated the photograph as looking similar to what Covello looked like on the night of his arrest, and if the State "misspoke" in its closing argument, stating that State's exhibit 51 was taken the night of the arrest, that was not how the testimony was presented at trial. The trial court denied the request to reopen evidence because the photograph was in Covello's possession throughout the trial and he had demanded a speedy trial. Covello proffered his testimony that State's exhibit 51 was actually taken the Friday before trial, and the proposed defense exhibit 3 was the photograph taken when he was booked into the jail on December 1, 2010.

The jury found Covello guilty on all three counts, as charged. The trial court sentenced Covello to life for the burglary count and five years concurrent for the grand theft count. The trial court did not adjudicate or sentence him on the home invasion robbery charge because the State acknowledged it would violate double jeopardy to convict Covello of both burglary of a dwelling with an assault while masked and home invasion robbery while masked, but asked the judge

> to sentence on the burglary of a dwelling with an assault while masked um, however for purposes of appeal the State is asking that you not dismiss the home invasion count, you just kinda leave it out there that way he's not being sentenced on that charge, but it's not dismissed by this Court.

This appeal followed.

*Legal Analysis*

<u>State's Exhibit 51</u>

"The decision to reopen a case lies within the discretion of the trial court and will not be disturbed on appellate review absent an abuse of discretion." *Santiago v. State*, 21 So. 3d 877, 881 (Fla. 4th DCA 2009) (quoting *Donaldson v. State,* 722 So. 2d 177, 181 (Fla. 1998)) (internal quotation marks omitted). However, "a denial will be reversed where the request is timely made and the jury will be deprived of evidence which might have had significant impact upon the issues to be resolved." *Santiago*, 21 So. 3d at 881 (quoting *Delgado v. State*, 573 So. 2d 83, 86 (Fla. 2d DCA 1990)).

The jury was deprived of evidence which might have had a significant impact upon the issues to be resolved. The State argued to the jury that

6

its exhibit 51 was a photograph taken from the night Covello was arrested. The record on appeal shows this assertion to be misleading. Comparing the photograph from the night Covello was arrested with State's exhibit 51, there is a difference in Covello's hair length. Since the victim's identification of Covello as the person who was in her home was based at least partially on his hair length, it was important that the jury be able to view how Covello's hair actually looked on the night of his arrest.

Even if there is a difference between the hair lengths of Sizemore and Covello in the photographs, as the State argues, there are additional factors which indicate that Covello should have been given an opportunity to show the jury the actual photograph from the night he was arrested: (1) the victim's description of the intruder's haircut and length, (2) the relative difference in the length of Covello's hair in State's exhibit 51 and defense exhibit 3, and (3) the fact that the victim indicated that she was "pretty sure" Covello was the intruder. Since the standard is whether the jury was deprived of evidence which might have had a significant impact, these factors, as well as the implications therefrom which Covello could have argued, would have provided the jury with not only evidence it was previously deprived, but also a *true* depiction of the facts of the case. Additionally, since the State's closing argument focused on comparing the photograph of Sizemore and the photograph of Covello in its exhibit 51 from "the night of the incident" as the State argued, it is clear that the jury should have been given the opportunity to view a true comparison of the hair styles.

Additionally, Covello's request to reopen his case was timely. In *Santiago,* we reversed a trial court's ruling denying a defendant's request to reopen his case *after* the jury was instructed. 21 So. 3d at 879. In that case, a Jimmy Ryce trial was held.[2] *Id.* at 878. Only one of the defendant's doctor-witnesses was allowed to give an opinion regarding the defendant's risk to reoffend, and she opined that he was not a risk to reoffend. *Id.* at 879. The defendant's doctor-witness testified that she was a member of a psychology association. *Id.* The State offered a witness in rebuttal who testified and provided a letter from the organization stating that the defendant's doctor-witness was not a member of the organization. *Id.* After the closing arguments were given and the jury was instructed, but before deliberations began, the defendant's attorney informed the court that the defendant's doctor-witness had just gotten off of a plane and would fax a copy of her membership card in the organization to prove she

---

[2] A "Jimmy Ryce" trial is a proceeding to determine if a defendant should be involuntarily committed for treatment as a sexually violent predator. § 812.135, Fla. Stat. (2014).

was a member. *Id.* at 879-80. The defendant requested that he be allowed to reopen his case to enter the copy of the membership card into evidence to rebut the State's witness's assertion that she was not a member of the organization. *Id.* at 880. The trial court denied the request. *Id.*

In discussing the timeliness of a request to reopen evidence at trial, we quoted our supreme court:

> *Even if the case had been technically closed, it would have been an abuse of discretion to refuse to open the case and permit the evidence to be introduced, upon the proper showing being made as to why it had been previously omitted.*

*Id.* at 881-82 (quoting *Steffanos v. State*, 86 So. 204 (Fla. 1920)) (citation omitted). We held that, since the State's evidence misled the jury, and was compounded by the prosecutor's argument in closing that reinforced the statements testified by the State's witness, the defendant should have been allowed to reopen his case. *Id.* at 882.

In this case, the trial had not even proceeded as far as the trial in *Santiago*, as the jury had not yet been instructed. Therefore, the fact that Covello requested that he be allowed to reopen his case after closing arguments does not make his request *per se* untimely. Our supreme court has held that a defendant should be allowed to reopen his case when "the cause had not proceeded so far that the ends of justice would have been defeated, or the orderly processes of the court disturbed, by an admission of the testimony." *Steffanos*, 86 So. at 206. Here, the jury had not yet been instructed, and there would have been little disorder to the process to allow Covello to submit defense exhibit 3 into evidence. Since the photograph that Covello wanted to introduce would have been entered with his limited testimony, it would not have interrupted the proceedings.

The State argues that any error involved in the trial court's ruling was harmless. We disagree. Since the appearance of the hair of all three suspects played a vital role in the victim's identification of Covello, we cannot say, beyond a reasonable doubt, that the trial court's denial of Covello's motion to reopen his case "did not contribute to the verdict." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). Covello should have been given the opportunity to correct the misrepresentation that the State presented to the jury. We therefore reverse Covello's conviction, and remand the case for a new trial.

*Judgment of Acquittal as to Grand Theft*

"Appellate review of the denial of a motion for judgment of acquittal is *de novo*." *Burkell v. State*, 992 So. 2d 848, 851 (Fla. 4th DCA 2008) (citations omitted).

In order for a person to be convicted of "grand theft, the State must prove that the value of the [property taken] was greater than $300." *Mansfield v. State*, 954 So. 2d 74, 76 (Fla. 4th DCA 2007) (citing § 812.014(2)(c)1., Fla. Stat. (2005)). "Florida courts have found that an owner's opinion of fair market value is sufficient *where it is supported* by 'evidence establishing the condition, quality, age, or depreciation of the item at the time it was stolen.'" *Sanchez v. State*, 101 So. 3d 1283, 1287 (Fla. 4th DCA 2012) (quoting *K.W. v. State*, 983 So. 2d 713, 715 (Fla. 2d DCA 2008)) (emphasis added).

The State failed to elicit sufficient testimony from the victim regarding the value of the items taken. For most of the items, the State failed to even elicit a fair market value, and where it did, the opinion was not supported with evidence establishing condition, quality, age, or depreciation of the items. The only stolen item that the State established an adequate fair market value for was the cell phone, which the victim estimated had a fair market value of $200. The establishment of the $200 value of the phone is not enough to prove that the value of the items taken was greater than $300.

Because there was insufficient proof of value to prove grand theft, the judgment of acquittal as to grand theft should have been granted, and the count should have proceeded as a petit theft. *See Mansfield*, 954 So. 2d at 77. On retrial, the State is prohibited from proceeding on a theory that the value of the stolen property was more than $300. Florida Rule of Criminal Procedure 3.640 states that:

> When a new trial is granted, the new trial shall proceed in all respects as if no former trial had occurred except that when an offense is divided into degrees or the charge includes a lesser offense, and the defendant has been found guilty of a lesser degree or lesser included offense, the defendant cannot thereafter be prosecuted for a higher degree of the same offense or for a higher offense than that of which the defendant was convicted.

Fla. R. Crim. P. 3.640. Additionally, our supreme court, in *Delgado v. State*, 948 So. 2d 681, 686 (Fla. 2006), "recognize[d] that an acquittal is

9

required when a conviction is not supported by *factually sufficient evidence*, and that such an acquittal gives rise to double jeopardy protections." (emphasis added) (internal citations omitted). Since we determine that the State provided *factually insufficient* evidence at trial, jeopardy attached, and Covello cannot be retried for any degree of theft greater than first-degree misdemeanor petit theft. We find this consistent with rule 3.640 as well, since, if the trial court had granted Covello's motion for judgment of acquittal at trial, as we find would have been proper, the jury would have been able to find Covello guilty of only a first-degree misdemeanor petit theft.

*Double Jeopardy*

"Because double jeopardy issues involve purely legal determinations, the standard of review is de novo." *Rimondi v. State*, 89 So. 3d 1059, 1060 (Fla. 4th DCA 2012) (quoting *Benjamin v. State*, 77 So. 3d 781, 783 (Fla. 4th DCA 2011)).

Although the trial court did not sentence or adjudicate Covello on the home invasion robbery while masked charge, a court cannot avoid a double jeopardy issue by failing to act on a charge. *See Murphy v. State*, 16 So. 3d 269 (Fla. 5th DCA 2009) ("A trial court must adjudicate and sentence a defendant convicted of a crime, or in an appropriate case, adjudicate the defendant not guilty due to a lack of sufficient evidence to convict, double jeopardy, or any other legally sufficient reason. The trial court may not simply refuse to act.").

While the State concedes error as to this inaction by the trial court (invited by the State), it argues that we should reverse the home invasion robbery while masked count, and allow the adjudication and sentence on the burglary with an assault while masked count to remain in effect. However, this would be contrary to established law, since the trial court should have adjudicated and sentenced Covello on the home invasion robbery while masked count and dismissed the burglary with an assault while masked count as a violation of double jeopardy.

"When an appellate court determines that dual convictions are impermissible, the appellate court should reverse the lesser offense conviction and affirm the greater." *Pizzo v. State*, 945 So. 2d 1203, 1206 (Fla. 2006). The State argues that because the burglary with an assault charge carries a greater maximum sentence, that it is the "greater" offense. However, in the recent case of *Tuttle v State*, 137 So. 3d 393 (Fla. 2d DCA

2014),[3] the Second District reviewed a similar issue. In *Tuttle*, the defendant was convicted, among other things, of attempted home invasion robbery and armed burglary. *Id.* The State conceded that the defendant could not be convicted of both for double jeopardy reasons, but the State and defendant disagreed on which of the convictions was the "lesser" and thus should be vacated. *Id.*

The Second District quoted language from *Pizzo*, and concluded our supreme court

> held that trial courts are to rely *exclusively* on an analysis of the statutory elements of the crimes to determine which is the "lesser," and it *explicitly* rejected the argument advanced by the State that the determination of which offense is the "lesser" offense should be based on a comparison of the punishments for the two offenses.

*Id.* at 395. The Second District then analyzed the statutory elements of home invasion robbery and burglary of a dwelling and determined:

> Home invasion robbery is defined as a "robbery that occurs when the offender enters a dwelling with the intent to commit a robbery, and does commit a robbery of the occupants therein." § 812.135(1), Fla. Stat. (2010). Burglary is defined as "entering or remaining in a dwelling . . . with the intent to commit an offense therein." § 810.02(1)(a), Fla. Stat. (2010). Even a cursory review of these elements makes clear that "[h]ome invasion robbery is in essence an aggravated form of burglary, because it requires a burglary and a robbery."

*Id.* (citation omitted).

The difference between the charges in this case, as compared to those analyzed in *Tuttle*, is that the State charged Covello with burglary of a dwelling *with an assault*, whereas Tuttle was charged with burglary of a dwelling *while armed*.[4] However, the elements analysis is similar. The definition of robbery in section 812.13, Florida Statutes (2010) is:

---

[3] We note that the Florida Supreme Court has accepted review of *Tuttle*. *Tuttle*, 137 So. 3d at 393, *rev. granted*, No. SC14-817, 2014 WL 3385588 (Fla. July 3, 2014).

[4] Unlike Tuttle, Covello was charged with committing the offenses "while masked." Tuttle was charged with attempted home invasion robbery, whereas

11

(1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, *assault*, or putting in fear.

§ 812.13(1), Fla. Stat. (2010) (emphasis added). Therefore, since an assault is also subsumed in the home invasion robbery statute, via the definition of "robbery," the burglary of a dwelling with an assault is also subsumed within the home invasion robbery statute. Thus, the burglary with an assault, although carrying a more severe potential sentence, is the "lesser" offense for double jeopardy purposes and should have been vacated.

Upon remand for a new trial, if Covello is again found guilty of both home invasion robbery and burglary of a dwelling with an assault, he should be sentenced on the home invasion robbery charge and the burglary of a dwelling with an assault charge should be dismissed on the grounds of double jeopardy.

*Reversed and remanded.*

STEVENSON and TAYLOR, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

---

Covello was charged with the completed crime. These additional distinctions do not alter the analysis.